**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARK FEDOR,** | ) | **CASE NO. 1:08cv1205** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **MAGISTRATE JUDGE GREG WHITE** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | **MEMORANDUM OF OPINION** |

Plaintiff Mark Fedor ("Fedor") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  The case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the Court affirms the final decision of the Commissioner.

**I.  Procedural History**

On March 2, 2004,[1] Fedor filed an application for SSI benefits alleging a disability onset date of June 2, 1994, and claiming he was disabled due to neck and shoulder pain, low back pain, and fecal incontinence.  (Tr. 35-39.)  His application was denied both initially and upon reconsideration.  Fedor timely requested an administrative hearing.

On December 19, 2005, Administrative Law Judge Joan G. Knight ("ALJ") held a

---

[1]February 21, 2004 is the protective filing date.  (Tr. 15, 30.)

hearing during which Fedor, represented by counsel, testified.  Steven S. Rosenthal also testified as the Vocational Expert ("VE").  On April 26, 2006, the ALJ found Fedor had the residual functional capacity ("RFC") to perform light work activity and, therefore, concluded he was not disabled within the meaning of the Act.  The ALJ's decision became the final decision of the Commissioner after the Appeals Council denied further review.[2]

On appeal, Fedor claims the ALJ failed to consider substantial evidence in the record that Fedor is incapable of performing even sedentary work and, therefore, a finding of disabled was warranted pursuant to 20 C.F.R., Part 404, Subpart P, Appendix 2, Rule 201.12.

## II.  Evidence

### Personal and Vocational Information

Fedor was born on August 2, 1955, making him 50 years old at the time of his administrative hearing.  He is a high school graduate.  (Tr. 21-22.)  He was last employed in 1991 at Sherwin-Williams Co. in the warehouse.  (Tr. 50, 102-103.)

### Medical Evidence

Fedor's prior application dated May 17, 2001, was based on low back problems for which the ALJ found Fedor had the RFC to perform a significant range of light work, including assembly and sorting jobs, and, therefore, he was not under a disability.  (Tr. 63-72.)  In Fedor's new application for benefits, he contends that in 2004 he was diagnosed with cervical disc herniations with radiculopathy causing neck and shoulder pain.  (Tr. 33.)  His low back problems have continued and he now suffers from fecal incontinence.  *Id.*  He asserts that these new impairments render him disabled as of the date of his application.  *Id.*

In January 2004, Fedor suffered pain after his shoulder came out of joint.  (Tr. 326.)  His primary care physician, Richard Weinberger, M.D., ordered magnetic resonance imaging

---

[2]Fedor filed two previous claims for disability benefits.  In February 1997, he applied, was denied, and appealed to this Court which affirmed on September 10, 2001.  (*See* Case No. 1:00cv1419, Doc. No. 17.)  Fedor applied again for benefits on May 17, 2001, which was denied by an ALJ on November 25, 2003, and affirmed by the Appeals Council on April 24, 2004.  (Tr. 15.)  No appeal was brought to the federal district court.

("MRI") of the left shoulder, which showed degenerative changes in the AC joint.[3]  No rotator cuff tear was present.  (Tr. 341.)

In February 2004, B. Cohn, M.D., ordered Fedor to undergo an MRI on his cervical spine which showed a herniated disc.  (Tr. 335-336).  At the same time, Dr. Cohn ordered an electromyogram ("EMG") which showed mild radiculopathy in his left arm.  (Tr. 338-339.)  In March, 2004, Dr. Cohn reported that Fedor had full strength, normal sensation, and symmetric reflexes.  (Tr. 319.)  Dr. Cohn did not recommend surgery, but instead referred Fedor to the MetroHealth Medical Center for pain management as it was closer to his home and had the ability to provide financial assistance.  (Tr. 319.)

On February 23, 2004, Fedor was examined by David Blatt, M.D., who reported that Fedor had full strength except for some slight weakness at the left biceps and deltoid, and essentially symmetrical reflexes.  (Tr. 257.)  After reviewing the MRI, he assessed Fedor to have left shoulder pain and believed he had injured that joint.  (Tr. 258.)  Dr. Blatt further assessed that Fedor may have cervical radicular pain.  *Id.*  Dr. Blatt recommended physical therapy, a cervical halter traction, and pain management for treatment.  *Id.*  Fedor said he could not afford any of these and refused treatment.  *Id.*  Dr. Blatt reexamined Fedor on March 11, 2004 and found that even though there was some improvement over the previous visit, Fedor was still having pain.  (Tr. 255.)  Again, Dr. Blatt recommended physical therapy and traction.  *Id.*  Fedor said he still was unable to afford treatment.  *Id.*

In April 2004, Fedor was referred to Emil Ibrahim, M.D., at the request of the State agency for a psychiatric evaluation.  (Tr. 269-271.)  According to Dr. Ibrahim's notes, Fedor stated he has a history of heavy alcohol dependence and continues to drink.  (Tr. 269.)  Dr. Ibrahim wrote that Fedor "was irritable, anxious, whining constantly, and complaining about vague pain and undefined somatic complaints."  (Tr. 271.)  Dr. Ibrahim diagnosed Fedor with alcohol dependence and determined Fedor had a global assessment of function ("GAF") score of

---

[3]The AC joint refers to the acromioclavicular joint.  (Tr. 341.)

3

60.[4]  (Tr. 270.)

In May 2004, Fedor complained of elbow pain and was diagnosed by Dr. Weinberger with epicondylitis of the right elbow.  (Tr. 351.)  In February 2005, he received a cortisone injection to the elbow to ease the pain.  (Tr. 348.)

On May 11, 2004, Gerald Klyop, M.D., a doctor from the Bureau of Disability Determination, reviewed the file and completed a physical RFC assessment.  (Tr. 262-265.)  Dr. Klyop determined that Fedor was capable of performing medium work with the additional limitation of no overhead reaching.  *Id*.  Dr. Klyop completed a second physical RFC assessment on August 11, 2004, wherein he determined Fedor was capable of performing light work with the same limitation of no overhead reaching (on his left side.)  (Tr. 304-309.)

On June 8, 2004, following Dr. Cohn's suggestion to visit a doctor at MetroHealth Medical System, Fedor saw Michael Eppig, M.D., for neck and shoulder pain.  (Tr. 267-268.)  Dr. Eppig observed that Fedor had no trouble with strength, sensation, or dexterity.  (Tr. 267.)  Dr. Eppig found Fedor had full neck and low back range of motion, symmetric and excellent reflexes.  (Tr. 267.)  After reviewing the cervical MRI, he opined that Fedor's clinical examination was "unremarkable."  *Id.*  He did not have symptoms or signs of root or cord compression.  *Id.*  His neck and occasional shoulder discomfort was no greater or more limiting than any of his other aches and pains.  (Tr. 267-268.)  Dr. Eppig's diagnosis was cervical disc displacement and degeneration.  (Tr. 268.)  Dr. Eppig's treatment notes indicate Fedor asked him to complete a disability form, which the doctor refused.  *Id*.

Dr. Weinberger completed an RFC assessment in October 2004, demonstrating a

---

[4]The GAF scale is used to report a clinician's judgment of an individual's overall level of functioning.  Clinicians select a specific GAF score within the ten-point range by evaluating whether the individual is functioning at the higher or lower end of the range.  A GAF score of 51-60 indicates symptoms of moderate difficulty in social, occupational, or school functioning.  *See* American Psychiatric Ass'n., *Diagnostic and Statistical Manual of Mental Disorders,* (American Psychiatric Association, 4th Ed. text rev. 2000)(DSM-IV-TR).

4

decreased range of motion from an earlier RFC.[5]  (Tr. 363-364.)  The maximum weight Fedor could lift/carry occasionally (from very little up to 1/3 of an 8-hour day) was 5 pounds.  He could stand/walk a total of 4 hours, and without interruption, 1/4 hour; and, he could sit for 2 hours at a time during an 8 hour workday, and without interruption, 1/4 hour.  (Tr. 363-364.)

In December 2004, Fedor was again seen by Dr. Cohn.  (Tr. 317-18.)  At this visit, Fedor's neck was nontender, his reflexes and strength were symmetric, and his neurosensory function was intact.  (Tr. 317.)  Fedor told Dr. Cohn that he was dissatisfied with Dr. Eppig's advice.  *Id.*  As surgery was not recommended, Dr. Cohn urged that Fedor follow up with Jerome Yokiel, M.D., for pain management.  *Id.*  Dr. Cohn also suggested that Fedor go to the Cleveland Clinic for further treatment of his herniated disc.  *Id.*

In March 2005, Fedor saw Dr. Yokiel for pain management of his neck.  (Tr. 312-315.)  Dr. Yokiel recommended that Fedor undergo a series of three epidural steroid injections, which were conducted in April 2005.  *Id.*

Fedor has also suffered from an ongoing history of intestinal/digestive issues.  In May 2005, Fedor, "due to change in bowel habits, abdominal pain," underwent a colonoscopy and a esophagogastroduoudenoscopy which revealed a hiatal hernia, portal HTN, gastopathy, esphageal varices grade I and diverticulosis.  (Tr. 378.)

In July 2005, Fedor complained of lower back pain and Dr. Yokiel ordered another MRI on his lumbar spine which established that he had a L4-5 right lateral disc herniation and a small L3-4 right disc protrusion.  (Tr. 462.)

---

[5]On February 5, 2003, prior to the protective filing date of this application, Dr. Weinberger completed an RFC form which established Fedor was limited to less than a full range of sedentary work.  (Tr. 364-365.)  Dr. Weinberger noted that these limitations were based upon medical findings of decreased ranges of motion with pain.  (Tr. 364.)  Specifically, he reported the maximum weight Fedor could lift/carry occasionally (from very little up to 1/3 of an 8-hour day) is 2-3 pounds.  In an 8-hour workday Fedor could stand/walk a total of 2 hours, and without interruption, 1 hour.  He could sit for 2 hours at a time during an 8 hour workday, and without interruption, ½ hour.  (Tr. 364-365.)

**Hearing Testimony**

At the hearing with the ALJ on December 19, 2005, Fedor testified to the following.  He completed high school but did not finish any vocational or technical school.  (Tr. 34.)  The last job he held was in 1991 with Sherwin Williams Company where he worked in the warehouse loading boxes or running a machine that placed tops on spray cans.  (Tr. 34-35.)  He was unable to do the lifting and bending required of the job.  (Tr. 35.)

He has a herniated disc in his neck which affects movement, and he has difficulty using his right arm and a slight problem with the left arm.  (Tr. 35.)   He spoke about pending surgery on his neck at University Hospitals.  (Tr. 35-36.)

Fedor indicated that he has low back pain caused by two herniated discs.  (Tr. 36.)  He also has digestive problems resulting in frequent use of the bathroom.  (Tr. 36-37.)  Further, prior to 1991, he had a problem with alcohol for which he was incarcerated.  (Tr. 37-38.)  He no longer has an alcohol problem and drinks infrequently.  (Tr. 38-39.)  He admitted to occasionally using marijuana, as recently as January 2005 (Tr. 39), and that Dr. Weinberger told him to stop drinking all alcohol.  (Tr. 48.)  Yet he still drinks beer as a "social thing."  *Id.*

Fedor testified that he has pains from problems with his gall bladder.  (Tr. 39-40.)  He also has anxiety and depression problems although he admitted he has not seen a psychologist.  (Tr. 40.)  He is prescribed medications for anxiety and depression.  (Tr. 40-41.)

Fedor lives with his mother.  (Tr. 42.)  Since she sustained an injury from an accident, he does the laundry and some cooking and cleaning.  *Id.*  He said that he does yardwork in the spring, but his brother, who lives upstairs, clears the driveway of snow in the winter.  *Id.*  He occasionally shops for a few groceries.  (Tr. 43.)

Fedor belongs to no organizations or clubs, nor does he have any hobbies or activities, except watching football with a friend.  (Tr. 43-44.)

When the ALJ asked him to describe an average day around the house, Fedor said that he tries to get off his feet and rest and that he has trouble sleeping at night.  (Tr. 44.)  He reads the paper, watches TV, and on occasion visits a friend or does something to get out of the house.  (Tr. 46.)  When asked specifically about how long he can walk before he has to rest, he said it

6

varies, depending on whether he is wearing boots and on the type of surface he is walking on. (Tr. 44-45.)  As to standing, he could stand a "good half hour" before he would have to rest.  (Tr. 45.)  Even when he is sitting, he said he has to keep adjusting himself to different positions.  (Tr. 45-46.)

When Fedor was asked about his sleep problems, he testified that due to his pain he sleeps only an hour or two at night.  (Tr. 46.)  He is prescribed medication to help him sleep.  *Id.*

Fedor indicated that he has a car that his brother gave him and for which his mother pays the insurance.  (Tr. 49.)  Fedor drives the car to the doctors' offices or to visit friends.  (Tr. 46-47.)  He could sit in a car for an hour before he would have to stand, although his longest trip in the past two years was to visit a doctor about 40 minutes away.  (Tr. 47.)

The ALJ asked Fedor if he could lift more than ten pounds from table height using both arms.  (Tr. 49.)  He responded that he thought he could lift it "maybe once, twice, . . . three times" but it would not be advisable as he has trouble even brushing his teeth.  *Id.*

Rosenthal, the vocational expert, testified that Fedor's past work at Sherwin Williams falls under the general category as warehouseman which was identified at a medium exertion level with unskilled responsibilities, lifting upwards to 20 pounds.  (Tr. 50-51.)  The ALJ asked the VE to consider whether a hypothetical person could perform either Fedor's past relevant work or any other work.  The hypothetical person had the same age, education and work history as Fedor, and could perform the exertional requirements of light work[6], but had the following

---

[6]     Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

postural limitations:

> this person could never climb ladders, ropes or scaffolds, could only occasionally climb ramps and stairs, occasionally balance, stoop and crouch.  This person cannot repetitively reach above shoulder-level with the left, non-dominant arm, . . . no repetitive reaching above shoulder-level with the left.  In addition, this person is further limited and could perform simple, routine work instructions.  That is, he can understand, remember and carry out simple, routine work instructions, . . . work in which there is no regular, general public contact, primarily work alone, with routine and relatively few changes.

(Tr. 51.)

The VE testified that there are several types of jobs for a hypothetical person with these limitations.  (Tr. 53.)  Fedor's past work in warehousing would be appropriate.  *Id.*  The VE also said that packaging or janitorial positions would also be appropriate as they are all light, unskilled exertional and competency levels.  (Tr. 53-54.)

Next, the VE testified as to the number of positions available in the economic development region where Fedor lives.  (Tr. 53.)  As to warehouseman positions, the numbers range from 800-900.  *Id.*  As to packager positions, the range is from 1,200 to 1,500.  *Id.*  As to the janitorial positions, the range is from 1,000 to 1,500.[7]  (Tr. 54.)

The VE also testified that jobs would still be available if the hypothetical person needed to sit/stand at will.  *Id.*  In this instance, there are unskilled, entry level assembly jobs that would range from 1,000 to 1,200.  (Tr. 55.)  There are also food preparer positions that range from 1,200 to 1,500.  *Id.*

Even if maintaining the sit/stand at will option but reducing the ability to lift and carry to a maximum of ten pounds, the VE testified that jobs are available, such as sedentary level packager positions ranging from 400 to 500 positions, assembly jobs ranging from 500 to 600, and food preparer positions ranging between 400 to 450 positions.  *Id.*

The VE testified that there would be no jobs for the same hypothetical person with the

---

20 C.F.R. § 404.1567(b).

[7]To compute the number of positions available in Ohio, the VE said one would multiply the numbers by 7; for positions in the United States, multiply the numbers by 200.

8

additional limitation of a person who is unable to work for a ten-day period each month because of fecal incontinence problems.  (Tr. 57-58.)

### III.  Standard for Disability

A claimant may also be entitled to receive SSI benefits when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The ALJ applies a five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act.  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which significantly limits . . . physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. § 416.905.  Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled.  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  The claimant bears the burden through the first four steps and the Commissioner bears the burden of proof at the final step.  *Longworth v. Comm'r. Soc. Sec. Adm*., 402 F.3d 591, 595 (6th Cir. 2003).  The Commissioner must "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity," 20 C.F.R. § 404.1565, and taking into account vocational factors such as age, education, and skills.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### IV.  Summary of Commissioner's Decision

After consideration of the entire record, the ALJ made the following findings regarding

Fedor:

1. He has not engaged in substantial gainful activity at any time relevant to this decision.

2. He has the following severe impairments: lumbar central disc herniation and mild degenerative changes of the lumbar spine, herniated nucleus pulposus of the cervical spine with degenerative joint disease, alcohol dependence, and left shoulder tendonitis.

3. He does not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 29 C.F.R. Part 404, Subpart P, Appendix 1.

4. He has the residual functional capacity to perform light work activity.

5. He is unable to perform any past relevant work.

6. He was born on August 2, 1955, and was thirty-eight years old on the alleged disability onset date[8], which is defined as a younger individual age 18-44.

7. He has at least a high school education and is able to communicate in English.

8. His past relevant work is unskilled so transferability of job skills is not an issue.

9. Considering his age, education, work experience, and residual functional capacity, there are a significant number of jobs in the national economy that he can perform.

10. He was not disabled within the meaning of the Act at any time between the alleged onset date, June 2, 1994, and the date of the ALJ's decision.

(Tr. 17-22.)

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal

--------

[8]Fedor questions the ALJ's computation of his age.  On June 2, 1994, the alleged disability onset date, Fedor would have been 38.  On February 21, 2004, the protective filing date, Fedor was 48.  At the hearing, Fedor testified that he was 50 years old.  (Tr. 34.)

standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrate law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Commissioner of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The ALJ's findings as to a claimant's credibility are entitled to deference because of the ALJ's unique opportunity to observe the claimant and judge his subjective complaints. *See, e.g., Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir. 1987)(*citing Kirk v. Sec. of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)).

### VI.  Analysis

Fedor claims that the ALJ erred in finding him capable of light work.  Fedor maintains that substantial evidence proves he is incapable of performing even sedentary work, and, therefore, the ALJ should have applied Rule 201.12 and found him disabled.  The Commissioner replies that there was substantial evidence supporting the ALJ's decision.

Pursuant to Social Security Rule 201.12, a claimant is found to be disabled if he can establish that he is closely approaching advanced age (50-54 years old), is a high school graduate

11

without transferable work skills, and can perform no more than sedentary work.  20 C.F.R. Part 404, Subpart P, App. 2, Table No. 1, Rule 201.12.

The ALJ found that Fedor has the following severe impairments: "lumbar central disc herniation and mild degenerative changes of the lumbar spine, herniated nucleus pulposus of the cervical spine with degenerative joint disease, alcohol dependence, and left shoulder tendonitis." (Tr. 17.)  As for Fedor's musculoskeletal impairments, the ALJ noted that the record established Fedor has no more than mild lumbar and cervical spine disorders, and has required no more than non-invasive treatment.  (Tr. 18.)  Furthermore, the ALJ relied on Dr. Eppig's treatment notes that there were no signs of nerve root or cord compression.  *Id.*  The opinion cited the record indicating that Fedor exhibited "full strength, normal gait and balance, and despite some guarding, full range of motion in the neck, with negative straight leg raising."  (Tr. 18-19.) Furthermore, the ALJ found that none of these impairments, or a combination of impairments, meets or medically equals one of the listed impairments in the Act.  *Id.*

The ALJ must consider all of the relevant evidence and then "must articulate at some minimal level [her] analysis of the evidence." *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988). Fedor claims that the ALJ did not take into consideration a lumbar MRI taken on July 12, 2005. However, the ALJ did consider this MRI in her conclusion regarding Fedor's severe impairments, and stated that it "showed L4-5 right lateral intra foraminal disc herniation and L3-4 small right paracentral disc protrusion (Exhibit 23F)."  (Tr. 18.)

The Commissioner argues that the ALJ reasonably found Fedor was not disabled based on normal clinical findings of three treating doctors, Dr. Cohn, Dr. Blatt and Dr. Eppig.  (Tr. 257, 267-268, 318-319.)  Fedor claims that the ALJ should have given greater weight to the opinions of Fedor's longstanding treating physician, Dr. Weinberger, especially over Dr. Eppig's opinion who examined Fedor only one time.

In concluding that none of Fedor's impairments, or a combination of impairments, meets or medically equals one of the listed impairments in the Act, the ALJ gave greater weight to Dr. Blatt's opinion, who treated Fedor from October 17, 2002 through March 11, 2004.  (Tr. 255-260.)  Dr. Blatt believed there was some injury to the left shoulder but recommended non-

operative treatment.  (Tr. 19, 258.)  After reviewing the cervical spine MRI dated February 2004,
Dr. Blatt's wrote in his notes:

> There is loss of the normal lordosis.  There is no cord compression, nor any signal
> change within the cord.  Disc protrusions and/or osteophyte is seen at 3-4, 4-5,
> and 6-7.  There is some canal narrowing at 3-4 but it does not affect the cord.
> Degenerative change is seen in the facets.  Mild foraminal narrowing, non
> compressive: At 4-5, there is a disc herniation or protrusion going off to the left
> which displaces the cord, though is not compressing it.  It would impinge upon
> the left C5 nerve root and the foramina.  Some narrowing to the right sided
> foramina, as well.  Some mild foraminal narrowing at 5-6 and 6-7.

(Tr. 258.)  The ALJ gave greater weight to Dr. Blatt's opinion as he was a treating physician and
found that his opinion was consistent with the "greater objective record."  (Tr. 19.)

Fedor asserts that the ALJ relied on Dr. Eppig's finding that there were no signs of nerve
root or cord compression to conclude that Fedor was not disabled.  (Tr. 18.)  Fedor contends that
this finding disregarded the cervical spine MRI conducted in February 2004, where the
reviewing doctor noted that C4-5 disc herniation impinges on the left side of the cord.  (Tr. 335.)
However, it is clear from the record that Dr. Eppig reviewed the February 2004 MRI and noted:

> . . . considerable C-6-7 left-sided disc and osteophyte which encroaches into the
> foramen.  He has a left-sided C-4-5 disc and has a right central C-3-4 disc
> protrusion.  I have explained to him that at this stage his examination is
> unremarkable.  He does not have symptoms or signs of root or cord compression.
> His neck and occasional shoulder discomfort is no greater or more limiting to him
> than any other of his aches and pains.

(Tr. 267-268.)

From this medical evidence, the ALJ concluded that Fedor has the RFC to perform light
work activity as he "can lift and carry ten pounds frequently and twenty pounds occasionally, sit,
stand and walk for six hours a day, perform unlimited pushing and pulling with the upper and
lower extremities, and occasionally climb ramps and stairs, balance, stoop, and crouch.  He
cannot climb ladders, ropes or scaffolds, and he has limitations on repetitive left handed
overhead reaching."  (Tr. 19.)

Fedor contends that the medical evidence identified examples of a reduced range of
motion, or pain with range of motion which do not allow light work activity.  Specifically, he
refers to Dr. Cohn's statement in medical notes dated January 26, 2004 that in Fedor's shoulder,
the "pain [is] at end range and some pain down shoulder."  (Tr. 326.)  Fedor also refers to Dr.

Blatt's notes dated February 23, 2004 and March 11, 2004, where the doctor states that there is "some slight weakness or give away at the left biceps and deltoid" and that Fedor "has limited abduction [in the shoulder joint] and a lot of pain."  (Tr. 257, 255.)

Fedor also argues that the ALJ should have considered the opinion of Dr. Weinberger who completed two RFC reports on Fedor, in February 2003 and October 2004, both concluding that he was limited to less than a full range of motion in his back due to pain.  (Tr. 363-363A, 364-365.)  Both reports established that, in Dr. Weinberger's opinion, Fedor was limited to less than the full range of sedentary work.  *Id.*  (Pl. Br. at p. 4.)  Moreover, in a letter to "whom it may concern" dated November 23, 2005, Dr. Weinberger asserted that Fedor was disabled due to his impairments.  (Tr. 489.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record."  *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)).  Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.  *Id*. at 460-61.  It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim.  *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988) (*citing Kirk*, 667 F.2d at 536); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Whitson v. Finch*, 437 F.2d 728, 732 (6th Cir. 1971).  When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight."  20 C.F.R. § 404.1527(d)(2).  In determining the weight to assign a treating source's opinion, the Commissioner considers the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements,

14

and the extent to which the source is familiar with other information in the case record relevant to the decision.  *Id.*

The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject determinations of such a physician when good reasons are identified for not accepting them.  *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.1984).  According to 20 C.F.R. § 404.1527(e)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability.  This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled.  "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."  *Id.* The Commissioner must make the final decision on the ultimate issue of disability.  *Duncan*, 801 F.2d at 855;  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

The ALJ gave little weight to Dr. Weinberger's opinion.  The ALJ stated:

> Dr. Weinberger is a family practitioner, not an orthopedist, and his opinion is contradicted by that of Dr. Eppig, whose findings showed the claimant was not so limited, and that his apparent discomfort did not translate into incapacitating pain (Exhibit 10F).  If the claimant were as limited as Dr. Weinberger stated, one would expect him to have muscle atrophy or some observable findings regarding his musculoskeletal complaints, of which there is none.

(Tr. 21.)  Therefore, the Court concludes that the ALJ did not err in giving little weight to Dr. Weinberger's opinions as they were not consistent with the objective medical record. Additionally, the ALJ relied on medical evidence from treating physicians, other than Dr. Weinberger, to support the conclusion that Fedor is capable of performing light work.

Fedor further claims that the ALJ ignored the opinion of Fedor's treating physician as to his fecal incontinence problems and that the ALJ did not find Fedor's testimony as to his digestive problems credible.  The ALJ considered the issue but found no evidence that Fedor had complained to his doctors of fecal incontinence as he testified at the hearing.  (Tr. 20.)  Fedor points to nothing in the record to support his gastrointestinal problems except that he underwent

15

a colonoscopy and esophagogastroduodenoscopy. These procedures resulted in the diagnoses of hiatal hernia, portal hypertension, gastropathy, esophageal varices grade I, and diverticulosis. Fedor alleges that these conditions could reasonably be expected to cause his digestive problems. (Tr. 378; Pl. Br. at p. 10.) As there is no medical evidence in the record to support Fedor's complaints, the ALJ's conclusion was proper.

Lastly, Fedor contends that the ALJ should have found that he is only capable of performing sedentary work. In that event, Rule 201.12 would have been applicable as he is within the age range from 50-54, has a high school diploma, has previously worked at an unskilled job and is unable to return to that job. *See Stathis v. Sullivan*, 964 F.2d 850, 851 (8th Cir. 1992); *Keen v. Sec. of Health & Human Servs*., 1987 WL 38894, *10, Case No. 86-4090 (6th Cir. Nov. 9, 1987). Here, the ALJ's finding that Fedor can perform light work is supported by substantial evidence. Therefore, Rule 201.12 is not applicable.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is affirmed and judgment is entered in favor of the Defendant.

IT IS SO ORDERED.

  s/ Greg White_____
United States Magistrate Judge

Date:  __April 29, 2009_____

16